Gerald L. Maatman, Jr.
Jennifer A. Riley
Alex W. Karasik
Duane Morris LLP
190 S. LaSalle St., Suite 3700
Chicago, IL 60603
Telephone: (312) 499-6700
GMaatman@duanemorris.com/
JARiley@duanemorris.com
AWKarasik@duanemorris.com

Mario Aieta
Duane Morris LLP
230 Park Avenue, Suite 1130
New York, NY 10169
Telephone: (212) 818-9200
MAieta@duanemorris.com

Ryan F. Monahan
Duane Morris LLP
Philadelphia, PA 19130
30 S 17th Street
Telephone: (215) 979-1182
RFMonahan@duanemorris.com

*Attorneys for Defendant ATC Healthcare Services, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICE WHITFIELD and FRANCISCA ONYEBUCHI on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>ATC HEALTHCARE SERVICES, LLC,<br><br>     Defendant. | Case No. 22-CV-5005 |

**ATC HEALTHCARE SERVICES, LLC'S**
**ANSWER TO AMENDED CLASS ACTION COMPLAINT**

Defendant, ATC Healthcare Services, LLC ("ATC" or "Defendant"), by and through their attorneys, Duane Morris LLP, answer Plaintiffs, Francisca Onyebuchi and Patrice Whitfield's ("Plaintiffs") Amended Class Action Complaint as follows:

## I.     INTRODUCTION

1.     ATC, a healthcare staffing company serving healthcare providers across the country, lost control over its employees' highly sensitive personal identifying information ("PII") and personal health information ("PHI") between February and December 2021 in an ongoing data breach by cybercriminals ("Data Breach").

**ANSWER:**     Defendant admits ATC is a healthcare staffing company. ATC denies the remaining allegations in this paragraph.

2.     On or around December 22, 2021, ATC discovered unusual activity involving employee email accounts. An investigation confirmed that these email accounts were accessed without authorization during most of 2021—between February 9, 2021, and December 21, 2021.

**ANSWER:**     ATC admits the allegations in the first sentence of this paragraph. ATC further admits that it conducted an investigation.  ATC is without sufficient knowledge to admit or deny the remaining allegations in this paragraph, and therefore denies the remaining allegations in this paragraph.

3.     On July 1, 2022—more than six months after the Data Breach was discovered and almost eighteen months after the Data Breach first began —ATC issued a Notice of Data Breach Incident (the "Breach Notice") to current and former employees impacted by the Data Breach. The Breach Notice stated that on discovering the Data Breach in late December 2021, ATC investigated and, on or about May 19, 2022, confirmed that employee email accounts had been accessed and that employee information exposed in the Data Breach contained "names, Social Security

numbers, driver's licenses, financial account information, usernames, passwords, passport numbers, biometric data, medical information, health insurance information, electronic/digital signatures and employer-assigned identification numbers."[1]

**ANSWER:** ATC admits that, on July 1, 2022, it issued a Notice of Data Breach ("Breach Notice") to current and former employees. ATC denies any characterization of the Breach Notice, which speaks for itself. ATC denies the remaining allegations in this paragraph.

4. ATC acknowledges its duty to protect employee confidential information. ATC's Breach Notice stated, the "confidentiality, privacy, and security of information within ATC's care are among ATC's highest priorities."[2]

**ANSWER:** The allegations in the first sentence of this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in the first sentence of this paragraph. The remaining allegations in this paragraph purport to characterize the Breach Notice, which speaks for itself and any characterization is denied.

5. Indeed, ATC has a legal duty to protect employee PII and PHI through its policies and state and federal law.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

6. On information and belief, ATC failed in that duty because it did not implement or adhere to cybersecurity measures that would have prevented or stopped cybercriminals from accessing its employees' PII and PHI.

---

[1] https://atchealthcare.com/notice-of-data-breach-incident/ (last visited August 18, 2022).
[2] *Id.*

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

7. Following the Data Breach, ATC said that it would "implement[] additional technical safeguards and work[] on additional training and education for our staff on ways to guard against cyber-attacks."[3] These are security measures ATC should have implemented *before* the Data Breach.

**ANSWER:** The allegations in the first sentence of this paragraph purport to characterize the Breach Notice, which speaks for itself and any characterization is denied. ATC denies the remaining allegations contained in this paragraph.

8. ATC's negligent conduct puts Plaintiffs and ATC's current and former employees at risk.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

9. Armed with employees' PII and PHI, data thieves can commit various crimes including, e.g., opening new financial accounts in employees' names, taking out loans in employees' names, using employees' names to obtain medical services, using employees' information to obtain government benefits, filing fraudulent tax returns using employees' information, obtaining driver's licenses in employees' names but with another person's photograph, and giving false information to police during an arrest.

---

[3] *Id.*

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

10. As a result of the Data Breach, ATC's current and former employees have been exposed to a heightened and imminent risk of fraud and identity theft. They must now and in the future closely monitor their financial accounts to guard against identity theft.

**ANSWER:** ATC denies the allegations in this paragraph.

11. Employees also incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

12. By their Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII and PHI was accessed during the Data Breach.

**ANSWER:** ATC admits that Plaintiff filed this complaint. ATC is without sufficient knowledge to admit or deny the remaining allegations in this paragraph, and therefore denies the allegations in this paragraph.

13. Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to ATC's data security systems, future annual audits, and adequate credit monitoring services funded by ATC.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## II.  PARTIES

14.  Plaintiff, Patrice Whitfield, is a natural person and citizen of Illinois, residing in Riverdale, Illinois, where she intends to remain. Plaintiff is a former ATC employee, where she was employed from October 2015 through August 2019 as a Certified Nursing Assistant. Plaintiff is a Data Breach victim, having received ATC's Breach Notice in July 2022.

**ANSWER:**  ATC admits that it employed Plaintiff Whitfield as a Certified Nursing Assistant in Illinois from approximately October 2015 to August 2019. ATC is without sufficient knowledge to admit or deny the remaining allegations in this paragraph, and therefore denies the remaining allegations in this paragraph.

15.  Plaintiff, Francisca Onyebuchi, is a natural person and citizen of Illinois, residing in Worth, Illinois where she intends to remain. Plaintiff is a former ATC employee, where she was employed from approximately 2012 to 2020 as a nursing assistant. Plaintiff is a Data Breach victim, having called the number that ATC provided on July 27, 2022—which confirmed that her PII and PHI were impacted.

**ANSWER:**  ATC admits that it employed Plaintiff Onyebuchi as a nursing assistant from approximately 2012 to 2020. ATC is without sufficient knowledge to admit or deny the remaining allegations in this paragraph, and therefore denies the remaining allegations in this paragraph.

16.  Defendant ATC Healthcare Services LLC is a Georgia limited liability company, with its principal place of business at 1983 Marcus Avenue, Suite E-122, Lake Success, New York 11042-1029.

**ANSWER:**  ATC admits the allegations in this paragraph.

### III.   JURISDICTION & VENUE

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

   **ANSWER:**   The allegations this paragraph state legal conclusions to which no answer is required.  To the extent an answer is required, ATC denies the allegations in this paragraph.

18.     This Court has personal jurisdiction over Defendant because ATC maintains its principal place of business this District and does substantial business in this District.

   **ANSWER:**   The allegations this paragraph state legal conclusions to which no answer is required.  To the extent an answer is required, Defendant admits only that its principal place of business is at 1983 Marcus Avenue, Suite E-122, Lake Success, New York 11042-1029.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

   **ANSWER:**   The allegations contained in this paragraph state legal conclusions to which no answer is required.  To the extent an answer is required, ATC denies the allegations in this paragraph.

### IV.   BACKGROUND FACTS

**A.   ATC**

20.     ATC is healthcare staffing company and a healthcare franchise. ATC's mission is to become "the go-to resource nationwide for healthcare communities in need of qualified staff."[4]

---

[4] https://atchealthcare.com/about/our-story/ (last visited August 18, 2022)

ATC's website encourages healthcare professional to join the ATC team for its flexible work schedules and outstanding benefits.[5]

**ANSWER:** ATC admits the allegations in this paragraph, except to the extent they purport to characterize https://atchealthcare.com/about/our-story/, which speaks for itself, and any characterization is denied.

21. Upon information and belief, ATC has approximately 4,000 employees across the country.

**ANSWER:** ATC denies the allegations in this Paragraph.

22. ATC's privacy policy promises to protect the sensitive information it collects by using "vulnerability scanning and/or scanning to PCI standards." ATC says it never asks for credit card numbers and uses "Malware Screening."[6]

**ANSWER:** The allegations in this paragraph purport to characterize https://atchealthcare.com/privacy-policy/, which speaks for itself, and any characterization is denied. The remaining allegations in this paragraph are denied.

23. ATC further promises, "We do not sell, trade or otherwise transfer to outside parties your Personally Identifiable Information."[7]

**ANSWER:** The allegations in this paragraph purport to characterize https://atchealthcare.com/privacy-policy/, which speaks for itself, and any characterization is denied. The remaining allegations in this paragraph are denied.

24. But, on information and belief, ATC fails to strictly adhere to its own policies in maintaining its employees' PII and PHI.

---

[5] *Id.*
[6] https://atchealthcare.com/privacy-policy/ (last accessed August 18, 2022).
[7] *Id.*

**ANSWER:** ATC denies the allegations in this paragraph.

**B.     ATC Fails to Safeguard Employee PII and PHI**

25.     Plaintiffs are former employees of ATC.

**ANSWER:** ATC admits the allegations in this paragraph.

26.     As a condition of employment with ATC, employees were required to disclose their PII and PHI.

**ANSWER:** ATC denies the allegations in this paragraph.

27.     ATC collects and maintains employee PII and PHI in its computer systems even after employees no longer work for ATC.

**ANSWER:** ATC admits that it collects and maintains employee PII and PHI in the ordinary course of employment. ATC denies the remaining allegations in this paragraph.

28.     In collecting and maintaining the PII and PHI of current and former employees, ATC agreed it would safeguard the data according to its internal policies and state and federal law.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required.  To the extent an answer is required, ATC admits that it has internal policies, consistent with state and federal law, for the protection of PII and PHI. ATC denies the remaining allegations in this paragraph.

29.     Even so, on or about February 9, 2021, hackers bypassed ATC's security systems and accessed employee PII and PHI.

**ANSWER:** ATC denies the allegations in this paragraph. ATC avers that upon information and belief, on or about, February 9, 2021, certain employee email accounts were accessed without authorization.

30.     Hackers did so undetected, as ATC would not discover the hack until more than nine (9) months later, on or about December 22, 2021.

**ANSWER:** ATC admits that, on or about December 22, 2021, ATC discovered unusual activity involving certain employee email accounts. ATC denies the remaining allegations in this paragraph.

31. By the time ATC discovered the Data Breach, cybercriminals had already accessed its employees' PII and PHI, including names, Social Security numbers, driver's licenses, financial account information, usernames, passwords, passport numbers, biometric data, medical information, health insurance information, electronic/digital signatures, and employer-assigned identification numbers.

**ANSWER:** ATC lacks sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

32. After discovering the Data Breach, ATC claims it initiated an investigation to determine the nature and scope of the event. ATC says the investigation confirmed that the email accounts were accessed without authorization at varying times between February 9, 2021, and December 22, 2021. A true and correct copy of the Breach Notice is attached as **Exhibit A**.

**ANSWER:** ATC admits that it initiated an investigation regarding the alleged Data Breach. ATC admits that a true and correct copy of the Breach Notice is attached as Exhibit A to the Complaint. The remaining allegations in this paragraph purport to characterize the Breach Notice, which speaks for itself, and any characterization is denied.

33. ATC says, "in an abundance of caution," it then undertook to identify what information was present in the impacted email accounts. ATC completed the first phase of this investigation on May 19, 2022.

**ANSWER:** ATC admits that, in an abundance of caution, it undertook a diligent review to identify what information was present in the impacted email accounts. ATC admits that

the first phase of this process was completed on May 19, 2022. ATC denies the remaining allegations of this paragraph, including any characterization of the Breach Notice, which speaks for itself.

34.     Thereafter, ATC worked "to reconcile the information with our internal records in furtherance of identifying the individuals to whom the data related and the appropriate contact information for the relevant individuals." *Id.* ATC says by June 2, 2022, it completed this investigative phase. However, inexplicably it took ATC yet another month to publicly disclose the Data Breach and to notify Data Breach victims. *Id.*

     **ANSWER:**     The allegations in this paragraph purport to characterize the Breach Notice, which speaks for itself, and any characterization is denied.

35.     On information and belief, cybercriminals could breach ATC's systems because ATC failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over employee PII and PHI. ATC's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing PII and PHI. Further, the Breach Notice makes clear that ATC has since implemented "additional training and education for our staff on ways to guard against cyber-attacks." *Id.*

     **ANSWER:**     ATC denies the allegations in the first and second sentence of this paragraph. The allegations in the third sentence of this paragraph purport to characterize the Breach Notice, which speaks for itself, and any characterization is denied.

**C.     Plaintiff Whitfield's Experience**

36.     Plaintiff Whitfield is a former ATC employee.

     **ANSWER:**     ATC admits the allegations in this paragraph.

37.     As a condition of Plaintiff's employment, ATC required her to provide her PII and PHI.

**ANSWER:** ATC denies the allegations in this paragraph.

38. Plaintiff provided her PII and PHI to ATC and trusted that the company would use reasonable measures to protect it according to ATC's internal policies and state and federal law.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

39. As a result of the Breach Notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Breach Notice, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

40. Since the Data Breach occurred, Plaintiff's debit card has been compromised three (3) times. Just three months ago, Plaintiff's bank account was compromised, and she was forced to close the account and open a new one.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

41. Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what PII and PHI was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in the first, second, and third sentences of this paragraph, and therefore denies the allegations in the first, second, and third sentences of this paragraph. The allegations in the fourth sentence of the paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in the fourth sentence of this paragraph.

42. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII and PHI—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

43. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII and PHI being placed in the hands of unauthorized third parties and possibly criminals.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

44. Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

**D.    Plaintiff Onyebuchi's Experience**

45.    Plaintiff Onyebuchi is a former ATC employee.

    **ANSWER:**    ATC admits the allegations in this paragraph.

46.    As a condition of Plaintiff's employment, ATC required her to provide her PII and PHI.

    **ANSWER:**    ATC denies the allegations in this paragraph.

47.    Plaintiff provided her PII and PHI to ATC and trusted that the company would use reasonable measures to protect it according to ATC's internal policies and state and federal law.

    **ANSWER:**    ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

48.    As a result of confirming her exposure (via phone call on July 27, 2022), Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

    **ANSWER:**    ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

49.    In fact, due to the Data Breach, Plaintiff has *already* suffered from numerous instances of identity theft and fraud:

    a.    A cybercriminal used Plaintiff's "CashApp" account and attempted to make fraudulent purchases for $1,000 and $500.

    b.    Thereafter, the fraudulent CashApp charges forced Plaintiff to close her bank account.

    c.    Cybercriminals used Plaintiff's Amazon.com account and attempted to make fraudulent purchases.

d. Cybercriminals used Plaintiff's PayPal account and attempted to make purchases of $500.

e. Plaintiff received text messages informing her about a governmental application (in her name) for monthly food stamps. But such messages reveal that someone had stolen Plaintiff's identity and filed a fraudulent application for governmental services. After all, Plaintiff had *never* applied for any such food stamps.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

50. Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what PII and PHI was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in the first, second, and third sentences of this paragraph, and therefore denies the allegations in the first, second, and third sentences of this paragraph. The allegations in the fourth sentence of the paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in the fourth sentence of this paragraph.

51. Additionally, Plaintiff suffered injury from a spike in spam and scam calls and text messages following the Data Breach.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

52. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII and PHI—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

53. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII and PHI being placed in the hands of unauthorized third parties and possibly criminals.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

54. Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

**E. Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft**

55. Plaintiffs and members of the proposed Class have suffered injury from the misuse of their PII and PHI that can be directly traced to Defendant.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

56. As a result of ATC's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.    The loss of the opportunity to control how their PII and PHI is used;

    b.    The diminution in value of their PII and PHI;

    c.    The compromise and continuing publication of their PII and PHI;

    d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.    Delay in receipt of tax refund monies;

    g.    Unauthorized use of stolen PII and PHI; and

    h.    The continued risk to their PII and PHI, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII and PHI in its possession.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

57. Stolen PII and PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII and PHI can be worth up to $1,000.00 depending on the type of information obtained.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

58. The value of Plaintiffs' and the proposed Class's PII and PHI on the black market is considerable. Stolen PII and PHI trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

59. It can take victims years to spot identity or PII/PHI theft, giving criminals plenty of time to use that information for cash.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

60. One such example of criminals using PII and PHI for profit is the development of "Fullz" packages.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

61.     Cyber-criminals can cross-reference two sources of PII and PHI to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

**ANSWER:**     ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

62.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs' and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and other members of the proposed Class's stolen PII and PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

**ANSWER:**     ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

63.     Defendant disclosed the PII and PHI of Plaintiffs and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII and PHI of Plaintiffs and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account

hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII and PHI.

      **ANSWER:**    ATC denies the allegations in this paragraph.

64.    Defendant's failure to properly notify Plaintiffs and members of the proposed Class of the Data Breach exacerbated Plaintiffs' and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

      **ANSWER:**    The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

**F.**    **Defendant failed to adhere to FTC guidelines.**

65.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII and PHI.

      **ANSWER:**    The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

66.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a.    protect the personal customer information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

d.      understand their network's vulnerabilities; and

e.      implement policies to correct security problems.

**ANSWER:**    The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

67.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

**ANSWER:**    The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

68.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

**ANSWER:**    The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

69.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

>**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

70. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

>**ANSWER:** ATC denies the allegations in this paragraph.

71. Defendant was at all times fully aware of its obligation to protect the PII and PHI of its employees. Defendant was also aware of the significant repercussions that would result from its failure to do so.

>**ANSWER:** ATC admits the allegations in the first sentence of this paragraph. The allegations in the second sentence of this paragraph are vague and ambiguous and, therefore, ATC denies the allegations in the second sentence of this paragraph.

**G. Defendant Ignored Best Practices for Healthcare Providers**

72. As shown above, experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

>**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

73. Several best practices have been identified that, at a minimum, should be implemented by healthcare providers like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

74. Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

**ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

75. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

76. These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## H. Defendant's Conduct Violates HIPAA Standards of Care and Evidences Its Insufficient Data Security

77. HIPAA requires covered entities like Defendant to protect against reasonably anticipated threats to the security of sensitive health information.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

78. Covered entities and their business agents (including Defendant) must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

79. Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D); and 45 C.F.R. § 164.530(b).

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

80. A Data Breach such as the one Defendant experienced is also considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.40

> **ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

81. Data breaches are also Security Incidents under HIPAA because they impair both the integrity (data is not interpretable) and availability (data is not accessible) of health information:

> The presence of ransomware (or any malware) on a covered entity's or business associate's computer systems is a security incident under the HIPAA Security Rule. A security incident is defined as the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system. See the definition of security incident at 45 C.F.R. 164.304. Once the ransomware is detected, the covered entity or business associate must initiate its security incident and response and reporting procedures. See 45 C.F.R.164.308(a)(6).[8]

---

[8] *See* https://www.hhs.gov/sites/default/files/RansomwareFactSheet.pdf at 4 (last visited August 18, 2022).

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

82. Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate ATC failed to comply with safeguards and standards of care mandated by HIPAA regulations, resulting in the unauthorized access to the PII and PHI of Defendant's current and former employees.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## V. CLASS ACTION ALLEGATIONS

83. Plaintiffs sue on their own behalf and on behalf of the proposed classes ("Class"), defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> **Nationwide Class**: All individuals residing in the United States whose PII and/or PHI was compromised in the Data Breach.

> **Illinois Subclass:** All individuals residing in Illinois whose PII and/or PHI was compromised in the Data Breach.

Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies that Plaintiffs' claims have merit, denies the existence of any alleged putative class of persons that Plaintiffs purport to represent in this matter, denies that Plaintiffs or the putative class members are entitled to any relief, and denies the remaining allegations in this paragraph.

84. Plaintiffs reserve the right to amend the class definition.

**ANSWER:** ATC reserves the right to respond to any amendment to the class definition.

85. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

    a.     **Numerosity**. Plaintiffs represent the proposed Class, consisting of at least 4,000 members, far too many to join in a single action;

    b.     **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

    c.     **Typicality**. Plaintiffs' claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

    d.     **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with the Class's interests and Plaintiffs have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

    e.     **Commonality**. Plaintiffs and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

        i.     Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII and PHI;

ii.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.      Whether Defendant was negligent in maintaining, protecting, and securing PII and PHI;

iv.      Whether Defendant breached contract promises to safeguard Plaintiffs' and the Class's PII and PHI;

v.      Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.      Whether Defendant's Breach Notice was reasonable;

vii.      Whether the Data Breach caused Plaintiffs' and the Class's injuries;

viii.      Whether Defendant violated 740 ILCS 14/15(d);

ix.      What the proper damages measure is; and

x.      Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

86. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual Plaintiffs are insufficient to make individual lawsuits economically feasible.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## VI.    COUNT I
### Negligence
**(On Behalf of Plaintiffs and the Nationwide Class)**

87.    Plaintiffs reallege all previous paragraphs as if fully set forth below.

**ANSWER:** Defendant incorporates its Answers to Paragraphs 1 through 86 as if fully stated herein.

88.    Plaintiffs and members of the Class entrusted their PII and PHI to Defendant. Defendant owed to Plaintiffs and other members of the Class a duty to exercise reasonable care in handling and using the PII and PHI in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

89.    Defendant owed a duty of care to Plaintiffs and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII and PHI in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII and PHI—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and members of the Class's PII and PHI by disclosing and providing access to this information to third parties and

by failing to properly supervise both the way the PII and PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

90. Defendant owed to Plaintiffs and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII and PHI. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiffs and members of the Class to take appropriate measures to protect their PII and PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

91. Defendant owed these duties to Plaintiffs and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and members of the Class's personal information and PII and PHI.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

92. The risk that unauthorized persons would attempt to gain access to the PII and PHI and misuse it was foreseeable. Given that Defendant holds vast amounts of PII and PHI, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII and PHI.

**ANSWER:** ATC denies the allegations in this paragraph.

93. PII and PHI are highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII and PHI of Plaintiffs' and members of the Class's and the importance of exercising reasonable care in handling it.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

94. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII and PHI of Plaintiffs and members of the Class which actually and proximately caused the Data Breach and Plaintiffs' and members of the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

95. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost benefit of their bargain, lost value of their PII and PHI and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## VII. COUNT II
### Negligence Per Se
### (On Behalf of Plaintiffs and the Nationwide Class)

96. Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

**ANSWER:** Defendant incorporates its Answers to paragraphs 1 through 95 as if fully stated herein. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

97. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and members of the Class's PII and PHI.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

98. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII and PHI. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's sensitive PII and PHI.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

99. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its employees' PII and PHI and by not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its employees in the event of a breach, which ultimately came to pass.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

100. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that,

because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

101. Defendant had a duty to Plaintiffs and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard PII and PHI.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

102. Defendant breached its respective duties to Plaintiffs and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII and PHI.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

103. Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

104. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and members of the Class would not have been injured.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

105. The injury and harm suffered by Plaintiffs and members of the Class was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their PII and PHI.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

106. Had Plaintiffs and members of the Class known that Defendant did not adequately protect their PII and PHI, Plaintiffs and members of the Class would not have entrusted Defendant with their PII or PHI.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

107. As a direct and proximate result of Defendant's negligence per se, Plaintiffs and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII and PHI; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores

and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

**ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph. Defendant avers that this Count has been dismissed with prejudice (ECF No. 18).

### VIII.   COUNT III
### Breach of an Implied Contract
### (On Behalf of Plaintiffs and the Nationwide Class)

108.    Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

**ANSWER:**    Defendant incorporates its Answers to Paragraphs 1 through 107 as if fully stated herein.

109.    Defendant offered to employ Plaintiffs and members of the Class in exchange for their PII and PHI.

**ANSWER:**    ATC denies the allegations in this paragraph.

110.    In turn, and through internal policies, Defendant agreed it would not disclose the PII or PHI it collects to unauthorized persons. Defendant also promised to safeguard employee PII and PHI.

**ANSWER:**    ATC denies the allegations in this paragraph.

111.    Plaintiffs and the members of the Class accepted Defendant's offer by providing PII and PHI to Defendant in exchange for employment with Defendant.

**ANSWER:**    ATC denies the allegations in this paragraph.

112.    Implicit in the parties' agreement was that Defendant would provide Plaintiffs and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII and PHI.

**ANSWER:** ATC denies the allegations in this paragraph.

113. Plaintiffs and members of the Class would not have entrusted their PII or PHI to Defendant in the absence of such agreement.

    **ANSWER:** ATC is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph.

114. Defendant materially breached the contract(s) it had entered with Plaintiffs and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiffs and members of the Class by:

    a.    Failing to properly safeguard and protect Plaintiffs' and members of the Class's PII and PHI;

    b.    Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

    c.    Failing to ensure the confidentiality and integrity of electronic PII and PHI that Defendant created, received, maintained, and transmitted.

    **ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

115. The damages sustained by Plaintiffs and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

    **ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

116.     Plaintiffs and members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

**ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, Defendant is without sufficient knowledge to admit or deny the allegations in this paragraph, and therefore denies the allegations in this paragraph. ATC specifically denies that any performance was waved by its conduct.

117.     The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

**ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

118.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

**ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

119.    Defendant failed to advise Plaintiffs and members of the Class of the Data Breach promptly and sufficiently.

      **ANSWER:**    ATC denies the allegations in this paragraph.

120.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

      **ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

121.    Plaintiffs and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

      **ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## IX.    COUNT IV
## Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class)

122.    Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

      **ANSWER:**    Defendant incorporates its Answers to Paragraphs 1 through 121 as if fully stated herein.

123.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

      **ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC avers that its Answers are pled in the alternative to its answers to the breach of implied contractual duty claim.

124.     Plaintiffs and members of the Class conferred a benefit upon Defendant in the form of services through employment.

      **ANSWER:**     ATC denies the allegations in this paragraph.

125.     Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs and members of the Class. Defendant also benefited from the receipt of Plaintiffs' and members of the Class's PII or PHI, as this was used to facilitate their employment.

      **ANSWER:**     ATC denies the allegations in this paragraph.

126.     Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and the proposed Class's services and their PII or PHI because Defendant failed to adequately protect their PII and PHI. Plaintiffs and the proposed Class would not have provided PII or PHI or worked for Defendant at the payrates they did, had they known Defendant would not adequately protect their PII or PHI.

      **ANSWER:**     The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

127.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

      **ANSWER:**     The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## X.     COUNT V
## Declaratory Judgment and Injunctive Relief
## (On behalf of Plaintiffs and the Nationwide Class)

128.    Plaintiffs incorporate all previous paragraphs as if fully set forth below.

**ANSWER:**    Defendant incorporates its Answers to Paragraphs 1 through 127 as if fully stated herein.

129.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious and which violate the terms of the federal and state statutes described above.

**ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

130.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiffs alleges Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiffs and members of the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

**ANSWER:**    The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

131.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII and PHI with which it is entrusted, specifically including information pertaining to financial records it obtains from its employees, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

b. Defendant breached, and continues to breach, its duty by failing to employ reasonable measures to secure its customers' personal and financial information; and

c. Defendant's breach of its legal duty continues to cause harm to Plaintiffs and the Class.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

132. The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its employees' (i.e., Plaintiffs' and members of the Class's) data.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

133. If an injunction is not issued, Plaintiffs and members of the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiffs and members of the Class will not have an adequate remedy at law because many of the resulting injuries are not readily

quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiffs and members of the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiffs and members of the Class, which include monetary damages that are not legally quantifiable or provable.

> **ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

134. The hardship to Plaintiffs and members of the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.

> **ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

135. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiffs, members of the Class, and the public at large.

> **ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## XI.    COUNT VI
### Violation of 740 ILCS 14/15(D)
### (On Behalf of Plaintiffs and the Illinois Subclass)

136. Plaintiffs incorporate all previous paragraphs as if fully set forth below.

**ANSWER:** Defendant incorporates its Answers to Paragraphs 1 through 135 as if fully stated herein.

137. Defendant collects, and is thus in possession of, biometric identifiers or biometric information, as defined in 740 ILCS 14/10, of Plaintiffs and its current and former employees.

**ANSWER:** ATC denies the allegations in this paragraph.

138. Defendant's Breach Notice admits that biometric identifiers and/or information was compromised in the Data Breach. This resulted in the disclosure of Plaintiffs and the Illinois Subclass's biometric identifiers and/or information without Plaintiffs' and the Illinois Subclass's consent in violation of the Illinois Biometric Privacy Act, 740 ILCS 14/15(d).

**ANSWER:** The allegations in the first sentence of this paragraph purport to characterize the Breach Notice, which speaks for itself and any characterization is denied. The remaining allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

139. Defendant's unlawful conduct is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Defendant is presumed to know these legal requirements.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

140. Defendant's unlawful conduct caused injury to Plaintiffs and the Illinois Subclass.

**ANSWER:** ATC denies the allegations in this paragraph.

141. Plaintiffs and the Illinois Subclass seek damages, including statutory damages, attorney' fees, and costs.

**ANSWER:** The allegations in this paragraph state a legal conclusion to which no answer is required. To the extent an answer is required, ATC denies the allegations in this paragraph.

## XII. PRAYER FOR RELIEF

Plaintiffs and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.      Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B.      Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C.      Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D.      Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII/PHI;

E.      Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.      Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.      Granting such other or further relief as may be appropriate under the circumstances.

**ANSWER:** Defendant denies that Plaintiffs' claims have merit, denies the existence of any alleged putative class of persons that Plaintiffs purport to represent in this matter, and denies that Plaintiffs or the putative class action members are entitled to any relief. Defendant denies each and every allegation in the Complaint that has not been separately and specifically admitted.

## XIII.   JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

**ANSWER:** ATC reserves the right to demand a jury trial as to all issues so triable.

# I.  AFFIRMATIVE DEFENSES

1.      Failure to state a claim. The Complaint fails to state a claim upon which relief can be granted.

2.      Lack of standing. Plaintiffs lack standing under Article III.

3.      Lack of harm. Plaintiffs' claims are barred because neither they, nor any putative class member, has suffered any harm, injury, or damage as a result of the data security incident involving ATC's employee email accounts.

4.      Statute of limitations. Plaintiffs' claims based on alleged misconduct that occurred outside the applicable limitations period are barred by the statute of limitations.

5.      Failure to mitigate. Plaintiffs' claims for which they failed to mitigate damages are barred in whole or in part.

6.      Intervening or superseding causation. Plaintiffs' claims are barred, in whole or in part, by the doctrine of intervening or superseding causation, including in part, because any alleged damages claimed to have been suffered in the Complaint were caused by the third-party criminals who attacked ATC's email account systems, and not by ATC.

7.      Contributory Negligence. Plaintiffs' claims are barred, in whole or in part, because her conduct contributed to any alleged injury.

8.      Assumption of risk. Plaintiffs' claims are barred, in whole or in part, by the doctrine of assumption of risk, in that anytime an individual uses a payment card or provides other personal information he or she knows that the information is at risk for theft and/or misuse by sophisticated criminals.

9.      Waiver, estoppel, laches, and ratification. Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, and/or ratification, as Plaintiffs may have,

whether through their actions or otherwise, given up their right to assert the claims alleged in the Complaint.

10.     Statute of frauds. Plaintiffs' claims based on alleged promises or statements that were not reduced to writing are barred by the statute of frauds.

11.     Defense of good faith. Plaintiffs' claims are barred, in whole or in part, by the defense of good faith because at all times ATC acted in good faith and in compliance with any applicable statutes and regulations.

12.     Defense of setoff. Plaintiffs' claims are barred, in whole or in part, by the defense of setoff, to the extent that Plaintiffs receive compensation from other sources for injury alleged as a result of the data security incident involving ATC's email account system.

13.     Lack of ownership. Plaintiffs' claims fail, in whole or in part, because ATC does not own or license personal information concerning Plaintiffs or any putative class member.

14.     Arbitration. Any or all of Plaintiffs' claims may be subject to mandatory, final, and binding arbitration with Defendant or third parties. Defendant hereby reserves, and does not waive, its right to arbitrate under any such agreements with Defendant or third parties.

15.     Discovery is ongoing in this case, and thus ATC reserves the right to assert any additional defenses that might come to its attention or might be developed during this action, whether as a matter of right or by leave of Court.

Dated:  January 16, 2024

                              Respectfully Submitted,

                              **DUANE MORRIS** LLP

                              By:  */s/ Gerald L. Maatman, Jr.*
                                    Gerald L. Maatman, Jr.
                                    Jennifer A. Riley
                                    Alex W. Karasik
                                    190 S. LaSalle St., Suite 3700
                                    Chicago, IL  60603
                                    Telephone:  (312) 499-6700
                                    GMaatman@duanemorris.com/
                                    JARiley@duanemorris.com
                                    AWKarasik@duanemorris.com

                                    Mario Aieta
                                    Duane Morris LLP
                                    230 Park Avenue, Suite 1130
                                    New York, NY  10169
                                    Telephone:  (212) 818-9200
                                    MAieta@duanemorris.com

                                    Ryan F. Monahan
                                    Duane Morris LLP
                                    Philadelphia, PA 19130
                                    30 S 17th Street
                                    Telephone: (215) 979-1182
                                    RFMonahan@duanemorris.com

## CERTIFICATE OF SERVICE

On January 16, 2024, I served Defendant's Answer to the Amended Complaint by the court's electronic filing system on all counsel to Plaintiff that has appeared in this action.

**DUANE MORRIS** LLP

By: _/s/ Gerald L. Maatman, Jr._